UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CENTRAL TRANSPORT INTERNATIONAL, INC.,

    Plaintiff/Counterclaim-Defendant

vs.                              Case No. 2:06-cv-401-FtM-29SPC

GLOBAL ADVANTAGE DISTRIBUTION, INC.; GENERAL ELECTRIC COMPANY; OSRAM SLYVANIA, INC.,

    Defendants.

OSRAM SYLVANIA, INC. and OSRAM SYLVANIA PRODUCTS, INC.

    Counterclaim-Plaintiffs.
_____

**OPINION AND ORDER**

This matter comes before the Court on defendants' Motion for Summary Judgment on Plaintiff's Complaint (Doc. #95) and plaintiff's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (Doc. #97) on the Second Amended Counterclaim (Doc. #59), both filed on September 4, 2007. Both parties filed oppositions (Docs. #105, #108) to each others' motions. Also before the Court is defendants' Motion to Strike Attachment "I" (Doc. #106) of plaintiff's motion for summary judgment, to which no response has been filed.

I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The Court does not weigh conflicting evidence or make credibility determinations. Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Tullius v. Albright, 240 F.3d 1317, 1320 (11th Cir. 2001)(citing Clemons v. Dougherty County, 684 F.2d 1365, 1369 (11th Cir. 1982)).

The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004). To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to

establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. <u>Celotex Corp.</u>, 477 U.S. at 322; <u>Hilburn v. Murata Elecs. N. Am., Inc.</u>, 181 F.3d at 1225. If there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. <u>Shotz v. City of Plantation</u>, 344 F.3d 1161, 1164 (11th Cir. 2003).

**II**.

Plaintiff Central Transport International, Inc. (Central Transport) is a motor carrier licensed to transport freight in interstate commerce. In early 2003 Central Transport entered into a Confidential Transportation Services Contract (the Transportation Contract) with defendant General Electric Company (GE), non-party Hunter Fan Company, and non-party Lockheed Martin Corporation to transport shipments between April 1, 2003 and March 31, 2006, at specified rates and charges. Generally, the Transportation Contract was to be governed by the laws of the state of New York.

In 2004, retailer Lowe's Home Centers, Inc. (Lowe's) initiated a nationwide "Reset Program" to realign the mix of lighting products offered to its customers. Pursuant to this program, both GE and Sylvania (collectively Osram Sylvania, Inc. and Osram Sylvania Products, Inc. unless otherwise specified) had light bulbs and other lighting products to be transported from approximately 800 Lowe's stores nationwide. Between October 2004 and January

2005, the light bulbs and lighting products were transported by Central Transport (and other carriers) to the warehouse of Global Advantage Distribution, Inc. (Global) in Myrtle Beach, South Carolina pursuant to the Transportation Contract. Many of the shipments arrived at Global significantly damaged.

On May 11, 2005, after discovery of numerous damaged shipments, GE executed an Assignment conveying rights under the Transportation Contract to Osram Sylvania, Inc. (Doc. #96-22, Exh. 21.) By a letter dated July 14, 2005, Osram Sylvania Products, Inc. authorized Global to start filing freight loss and damage claims on its behalf with Central Transport. (Doc. #96-18, Exh. 17.) Eventually, 93 claims were filed with a claimed dollar value of approximately $521,897.98. The claims were all rejected by Central Transport.

In its Complaint for Declaratory Judgment (Doc. #1), Central Transport seeks declarations of the following: (1) That GE's Assignment of its contract rights to Sylvania to pursue the claims against Central Transport was invalid and unenforceable (Count I); (2) that the time period in which GE can file a claim against Central Transport arising from its transport of GE's light bulbs and related products has expired, and having failed to satisfy this condition precedent for recovery, there can be no recovery for any of the claims for alleged damage to freight by GE (Count II) or Sylvania if the Assignment is valid (Count III); (3) that Global's freight claims are invalid because Global does not have standing to

submit freight damage claims to Central Transport under the terms of the Transportation Contract (Count IV); (4) that Global's freight claims are without merit and unenforceable because damage to the subject freight was due primarily, if not solely, to the actions of Global's personnel (Count V); (5) that Global has filed false and groundless claims; that Global misrepresented the value of the freight; that the freight was inadequately boxed; and that Central Transport is entitled to recover damages from Global relating to these claims (Count VI); and (6) that GE is required to indemnify Central Transport for any and all damages assessed against Central Transport arising from GE's breach of the Transportation Contract (Count VII).

Sylvania filed a Second Amended Counterclaim (Doc. #59) against Central Transport seeking monetary damages totaling $667,800.00 for: negligence, in its capacity as owner of the damaged property (Count I); negligence, in its capacity as assignee of GE (Count II); breach of the Transportation Contract as the actual and intended assignee of GE (Count III); negligence, in its capacity as principal of its agent Global (Count IV); and violation of the Carmack Amendment (Count V).

**III.**

**A.**

In Count I of its Complaint for Declaratory Judgment (Doc. #1), Central Transport seeks a declaration that GE's Assignment of its contract rights to Sylvania to pursue the claims against Central Transport was invalid and unenforceable. Central Transport asserts that the May 11, 2005 Assignment was not legally valid or enforceable because it assigned the Transportation Contract, in violation of an anti-assignment provision in the contract. In its Brief in Opposition, Central Transport argues that the Assignment is "void." (Doc. #108, p. 5.) GE responds that while the Transportation Contract could not be assigned, it assigned only the right to pursue claims for damages under that Transportation Contract, not the contract itself. (Doc. #95, p. 16.) Both parties agree that this issue must be analyzed under New York law.

"An assignment is a transfer or setting over of property, or of some right or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one whole interest in an estate, or chattel, or other thing." In re Stralem, 758 N.Y.S. 2d 345, 347 (N.Y. App. Div. 2003)(citations omitted). "Under New York law, contracts are freely assignable, absent language which expressly prohibits assignment." Id. (citations omitted). "New York Courts generally recognize and enforce a contract provision prohibiting its assignment [ ] and even a right to contest non-assignability." University Mews Assocs. v. Jeanmarie, 471 N.Y.S. 2d 457, 461 (N.Y. Sup. Ct. 1983)(internal citations omitted). There is a distinction,

however, between assigning a contract and assigning the right to pursue a claim under the contract. Rosecrans v. William S. Lozier, Inc., 142 F.2d 118, 124 (8th Cir. 1944)("The prohibition of the contract against assignment is against an assignment of the rights and privileges under the contract. This prohibition of assignment does not, however, prohibit the assignment of a claim for damages on account of breach of the contract.") See also Allhusen v. Caristo Const. Corp., 303 N.Y. 446, 452, 103 N.E. 2d 891, 893 (N.Y. 1952)(recognizing that assignment was of right to monies due under a contract, not of the contract itself).

If an assignment violates a non-assignment provision of a contract, New York law allows one of two possible remedies, depending upon the language of the non-assignment clause. "With limited exception, contractual provisions prohibiting assignments are treated as personal covenants. An assignment made in violation of a personal covenant prohibiting assignments is enforceable, although it does give rise to a damages action against the assignor." Pro Cardiaco Pronto Socorro Cardiolgica S.A. v. Trussell, 863 F. Supp. 135, 137-38 (S.D.N.Y. 1994)(citations omitted). See also Macklowe v. 42nd Street Dev. Corp., 170 A.D. 2d 388, 389 (N.Y. App. Div. 1991)("where the language employed constitutes merely a personal covenant against assignments, an assignment made in violation of such covenant gives rise only to a claim for damages against the assignor for violation of the covenant.")

The exception is when clear and definite language in the anti-assignment clause prohibits assignment. "[A]ssignments made in contravention of a prohibition clause in a contract are void if the contract contains clear, definite and appropriate language declaring the invalidity of such assignments." Macklowe, at 389 (citations and quotation omitted). See also Cole v. Metropolitan Life Ins. Co., 708 N.Y.S. 2d 789, 790 (N.Y. App. Div. 2000)(quotation and citations omitted). "Whether a non-assignment clause renders a subsequent assignment void or the breach of a personal covenant not to assign depends upon the expressed intent of the parties, namely whether the language is sufficiently express to bar the assignment." C.U. Annuity Serv. Corp. v. Young, 281 A.D. 2d 292, 722 N.Y.S.2d 236 (N.Y. App. Div. 2001).

> For a contractual clause forbidding or restricting an assignment of rights thereunder to reveal the intent necessary to preclude the poser to assign, or cause an assignment violative of contractual provisions to be wholly void, such clause must contain express provisions that any assignment shall be void or invalid if not made in a certain specified way. Such must specifically eliminate the power as well as the right to assign the contract in violation of its bar or restrictions, otherwise the original obligor is given only the right to damages for its breach, but does not render the assignment ineffective.

University Mews Assocs., 471 N.Y.S. 2d at 461 (citations omitted).

Thus, the first step is to determine whether a particular assignment violates the specific terms of a non-assignment clause. The second step is to determine the appropriate remedy if a breach of a non-assignment provision has been established.

The Transportation Contract in this case provides in pertinent part that "This Contract shall not be assigned by either party without the written consent of the other party, which shall not unreasonably be withheld." (Doc. #96-27, Exh. 26, ¶ 2.J.) There is no dispute that GE did not obtain the written consent of Central Transport for the Assignment. The Assignment identifies what was assigned as follows:

> . . . GE hereby sells, transfers, assigns and sets over to [Sylvania] and its successors and assigns, **any all [sic] rights, interests and claims ("Claims") that GE has or may have against Central Transport, Inc. ("Central"), arising from Central's transportation of GE's goods and property consisting of Sylvania and Westinghouse Light bulbs on or about Sept. 15, 2004 from Sept. 15, 2004 [sic] to Dec. 15, 2004** and as reflected in and evidenced by the following described documents: pick up and delivery receipts, bills of lading, PROs and damage reports ("Documents") and GE gives [Sylvania] full power and authority, for its own use and benefit, . . . to prosecute and withdraw any suits or proceedings at law or in equity against Central for such Claims as fully and to all intents and purposes as GE might or could do as if this assignment were not made.

(Doc. #97-4)(emphasis added).

Thus, the anti-assignment clause in the Transportation Contract bars assignment of the "Contract." The Transportation Contract required Central Transport to ship items for GE at certain agreed-upon rates and charges. The Transportation Contract existed before the shipping necessitated by the Lowe's Reset Program, and was not limited to the products shipped pursuant to the Lowe's Reset Program. The language of the Assignment is clear that it was not the "contract" which was assigned, but only certain claims

arising under the contract. The Transportation Contract did not utilize language indicating an intent that such claims could not be assigned. E.g., New Jersey Dep't of Treasury v. Visara Int'l, Inc., 166 Fed. Appx. 639, 641 n.3 (3d Cir. 2006)(contract precluded assignment of the contract "in whole or in part"); Biosynexus, Inc. v. Glaxo Group Ltd., 816 N.Y.S. 2d 693 n.4 (N.Y. Sup. Ct. 2006), aff'd in part, modified in part, 836 N.Y.S. 2d 126 (N.Y. App. Div. 2007)(contract precluded assignment of contract and "any interest hereunder"). The Court concludes that the May 11, 2005 Assignment did not violate the non-assignment provision of the Transportation Contract because it did not assign the Transportation Contract, only some claims under the contract.

Alternatively, even if the Assignment did violate the non-assignment provision, the language of the Transportation Contract is insufficient to render the Assignment void. The Contract simply states that: "This Contract shall not be assigned by either party without the written consent of the other party, which shall not unreasonably be withheld." This is not clear, definite, and appropriate language declaring the invalidity of an assignment so as to render the assignment void. Compare Allhusen (provision stating assignment of contract or any interest therein "shall be void" was sufficiently clear, definite and appropriate to void any assignment of either the contract or any rights created under the contract), and Singer Asset Fin. Co., L.L.C. v. Bachus, 294 A.D. 2d 818 (N.Y. App. Div. 2002)(contract provision stating that its

-10-

proceeds "are not subject in any manner to . . . assignment . . ." nor shall person "have the power to sell, mortgage, or encumber . . . by assignment or otherwise" was sufficient to render assignment void), and C.U. Annuity Serv. Corp., (same), with Macklowe, (agreement not to sell or assign interest created only a personal covenant subject to suit for breach, but did not render assignment void).

Accordingly, summary judgment will be granted in favor of defendants as to Count I of the Complaint for Declaratory Relief because plaintiff is not entitled to a judgment that GE's Assignment of rights to pursue the claims against Central Transport under the Transportation Contract was invalid, unenforceable, or void.

**B.**

In Counts II and III of its Complaint for Declaratory Judgment, Central Transport seeks declarations that the nine month period in which GE could file a claim against Central Transport arising from its transport of GE's light bulbs and related products has expired, and having failed to satisfy this condition precedent for recovery, there can be no recovery for any of the claims for alleged damage to freight by GE (Count II) or Sylvania if the Assignment is valid (Count III). Central Transport admits that claims were filed by Global within the requisite nine (9) months, but argues that Global was not the proper party to do so and the

proper parties failed to file timely claims. (Doc. #96-10, Exh. 9, p. 17; Doc. #108, p.7.)

As discussed above, the May 11, 2005 Assignment of the claims by GE to Osram Sylvania, Inc. was valid and not in violation of the Transportation Contract, or alternatively was at least not void. As the assignee, Osram Sylvania, Inc. "stands in the shoes" of GE, <u>Septembertide Pub., B.V. v. Stein & Day, Inc.</u>, 884 F.2d 675, 682 (2d Cir. 1989)("It has always been the law in New York that an assignee stands in the shoes of its assignor. . . ."), and could therefore file claims for damage to the freight. By letter dated July 14, 2005, Orsam Sylvania Products, Inc. authorized Global to file damage claims on its behalf against Central. (Doc. #96-18, Exh. 17.) Nothing in the Transportation Contract precludes GE or is assignee from filing claims through an authorized agent, or required prior disclosure of such agent. It is undisputed that Global filed claims within the nine month period.

Central Transport argues, however, that there is a missing link in the assignments which results in Global being unable to file claims on behalf of Sylvania or GE. Central Transport asserts that Osram Sylvania, Inc., as the assignee of GE, never assigned the rights it obtained under the Assignment to Osram Sylvania <u>Products</u>, Inc., which was the only entity which authorized Global to act as its agent in filing the claims. This gap, Central Transport asserts, results in Global having no rights or standing to assert any claim against Central Transport, since it was a

-12-

complete stranger to the Transportation Contract and did not receive any authority from the assignee, Osram Sylvania, Inc. Thus, Central Transport asserts, Global's claims cannot satisfy the contractual 9 month obligation as to GE, Osram Sylvania, Inc., or Osram Sylvania Products, Inc.

Because the Assignment is not void, defendants are entitled to summary judgment as to Count II. GE does not assert a claim against Central Transport, having assigned that right to Osram Sylvania, Inc. Since there can be no claim by GE, there is no controversy as to condition precedent as it relates to GE, and no declaratory judgment is warranted.

As to Count III, Osram Sylvania Products, Inc. is one of several wholly owned subsidiaries of Osram Sylvania, Inc. The authority of Osram Sylvania Products, Inc. to act for its parent company can result from an assignment[1], or under traditional principles of agency[2], or because Delaware law does not require formalities between a parent corporation and its wholly-owned subsidiary.[3] The deposition testimony of Terry A. Lavin (Doc. #97-

---

[1] "[N]o particular words are necessary to effect an assignment; it is only required that there be a perfected transaction between the assignor and assignee, intended by those parties to vest in the assignee a present right in the things assigned." In re Stralem, 303 A.D. 2d 120, 122 (N.Y. App. Div. 2003)(collecting cases).

[2] Mouawad Nat'l Co. v. Lazare Kaplan Int'l, Inc., 476 F. Supp. 2d 414, 421-423 (S.D.N.Y. 2007).

[3] "There is, of course, no doubt that upon a proper showing corporate entities as between parent and subsidiary may be
(continued...)

3, Exh. B) creates a factual basis which precludes ruling out any basis to fill the gap identified by Central Transport. On the other hand, the testimony does not compel a finding that the gap is legally insignificant. Thus, there are factual matters which must be resolved by a jury, and summary judgment will be denied as to Count III.

### C.

In Count IV of its Complaint for Declaratory Judgment, Central Transport seeks a declaration that Global's freight claims are invalid because Global does not have standing to submit freight damage claims to Central Transport under the terms of the Transportation Contract because of the assignment gap between Osram Sylvania, Inc. and Osram Sylvania Products, Inc. For the reasons stated as to Count III, there are disputed factual issues which preclude summary judgment as to Count IV.

### D.

In Count V of its Complaint for Declaratory Judgment, Central Transport seeks a declaration that Global's freight claims are without merit and unenforceable because damage to the subject freight was due primarily, if not solely, to the actions of Global's personnel. The record does not establish that the damage

---

[3](...continued)
disregarded and the ultimate party in interest, the parent, be regarded in law and fact as the sole party in a particular transaction." Pauley Petroleum, Inc. v. Continental Oil Co., 239 A.2d 629, 633 (Del. 1968).

was solely or primarily due to Global's personnel. Even if Global's personnel caused some of the damage, it would not render all claims completely unenforceable. While this would be relevant as to liability as to some shipments and the amount of damages, it would not preclude Global's claims. Accordingly, plaintiff is not entitled to the declaration it seeks in Count V, and summary judgment will be granted in favor of defendants.

**E.**

In Count VI of its Complaint for Declaratory Judgment, Central Transport seeks a declaration that Global has filed false and groundless claims; that Global misrepresented the value of the freight; that the freight was inadequately boxed; and that Central Transport is entitled to recover damages from Global relating to these claims. There are a number of material factual disputes which preclude summary judgment as to these assertions. Summary judgment is therefore denied.

**F.**

In Count VII, Central seeks a declaration that GE is required to indemnify Central Transport for any and all damages assessed against Central Transport arising from GE's breach of the Transportation Contract, i.e., its invalid assignment of the Transportation Contract. Because the Assignment was not a breach of the Transportation Contract, no basis has been shown under the

Transportation Contract for indemnification. Summary judgment on Count VII must be entered in favor of defendants.

### G.

In sum, the Court will grant summary judgment as to Counts I, II, V, and VII of the Complaint for Declaratory Relief. Summary judgment will be denied as to Counts III, IV, and VI.

### IV.

In the Second Amended Counterclaim (Doc. #59), Sylvania seeks damages totaling $667,800.00 for Central Transport's negligence in its capacity as owner of the damaged property (Count I), in its capacity as assignee of GE (Count II), and in its capacity as principal of its agent Global (Count IV); breach of the Transportation Contract as the actual and intended assignee of GE (Count III); and violation of the Carmack Amendment (Count V).

At the December 17, 2007 Final Pretrial Conference, counsel for all parties agreed that if the Assignment was not void then the only viable count in the Second Amended Counterclaim is the breach of contract claim in Count III. Therefore, the Court will grant summary judgment in favor of plaintiff on the Second Amended Counterclaim as to Counts I, II, IV, and V.

Central Transport argues that it is entitled to summary judgment as to the breach of contract claim (Count III) for several reasons. First, Central Transport asserts that there can be no breach of contract claim because the Assignment of the contract was

invalid and therefore Sylvania has no contractual relationship with Central Transport. Because the Court has found the Assignment to be valid, this argument is rejected.

Central Transport next asserts that there can be no breach of contract claim because the condition precedent of the timely filing of claims has not been satisfied in this case, and that Global's filing of claims does not count as to Sylvania or GE. As discussed above, there are material issues of disputed facts as to these matters, and summary judgment is therefore not warranted.

Central Transport asserts that the terms of the Assignment and the Transportation Contract only permit claims for loss and damage to freight owned by GE, and further asserts that since GE did not own the freight at issue in this case, there can be no damages by the assignee.

The Court finds nothing in the Transportation Contract which limits the freight to be shipped or the freight on which liability may be based to freight owned by GE. The contract provides "Carrier [Central Transport] agrees to transport for Shipper [GE] **all** shipments at the rates and charges set forth in Appendix I." (Doc. #97-2, Exh. A, § 2A)(emphasis added). It further provides that "[r]ates, discounts, terms and conditions in this Contract apply on all shipments by the Carrier and paid for by the Shipper, its divisions, subsidiaries, joint ventures, agents, affiliates and third parties where the third party pays the bill for the Shipper." (Id. at § 2L.) The contract also provides that Central Transport

"is liable to Shipper for full replacement value of Shipper's goods for loss or damage to goods occurring while. . . ."  (Id. at § 7IIa).)  Nothing in the use of the possessive noun "Shipper's" denotes a requirement of title or ownership, as opposed to GE's right to possession of the freight under the terms of its contracts with third parties.  Similarly the Assignment does not require ownership by GE.  The pertinent provision assigns claims "arising from Central's transportation of GE's goods and property consisting of Sylvania and Westinghouse Light bulbs on or about Sept. 15, 2004 from Sept. 15, 2004 [sic] to Dec. 15, 2004 and as reflected in and evidenced by the following described documents: pick up and delivery receipts, bills of lading, PROs and damage reports ("Documents"). . . ."  (Doc. #97-4.)  The Court declines to read "GE's goods" to require title or ownership.  Even if GE ownership is required, there are disputed issues of material fact which would preclude summary judgment.

Finally, Central Transport seeks summary judgment as to the breach of contract count because the improper packaging prior to transportation was the cause of the damages, not Central's conduct.  There are material disputed facts as to this issue which preclude summary judgment.

Also before the Court is defendants' Motion to Strike Central's Attachment I (Doc. #106), a letter report by Barry S. Rope.  Reliance on the report is not necessary to resolve the

summary judgment motion, and a separate Daubert Motion (Doc. #98) has been filed addressing the same report. Therefore, the motion will be denied.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendants' Motion for Summary Judgment on Plaintiff's Complaint (Doc. #95) is **DENIED** on the merits as to Counts III, IV, and VI, and **GRANTED** as to Count I, II, V, and VII.

2. Plaintiff's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (Doc. #97) as to the Second Amended Counterclaim is **GRANTED** as to Counts I, II, IV, and V, and is **DENIED** as to Count III.

3. Defendants' Motion to Strike Attachment "I" (Doc. #106) is **DENIED**.

4. The Clerk shall withhold the entry of judgment until the conclusion of the case.

**DONE AND ORDERED** at Fort Myers, Florida, this ___17th___ day of December, 2007.

*/s/ John E. Steele*
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record